We will call our final case. It is Angela Cruz v. MM 879, Inc. et al. Case number 21-15974. And each side will have 20 minutes for argument. Good morning, Your Honor. Brett Sutton here of Sutton Hague Law Corporation on behalf of Appellants. Your Honors, and I would like to reserve four minutes for my rebuttal, please. Any entity that has the right to control how California workers are paid has a responsibility to ensure they're paid in accordance with the law. Any entity that is a common law employer, because they have the right to hire, fire, or terminate the employees, also has the responsibility to ensure that those workers are paid in accordance with California law. Any entity that allows a third party to represent and lead workers to believe who work for that third party, that they're also employed by the principal entity, has a responsibility to make sure those workers are paid in accordance with California law. In our situation, these respondents, two national large companies, are seeking to absolve themselves of liability for failure to pay my clients, who is a class of home cleaner workers at the lowest end of the economic scale, simply because they say despite the fact they might have had the right under the written agreements to do these things or to be the common law employer, they chose not to get involved. They turned a blind eye towards the wage and hour practices. That is not the law, nor should it be the law. Now, of course, we're here on an appeal of a summary judgment motion. All inferences, all ambiguities are to be construed in the light most favorable to my clients. This principle that we have cited, starting with AOLA, cited in Borrello, Toyota Motor Sales, Portuga, Burlingham, and then reiterated in the Matai case in 2020 by California Appellate Court in the context that we're talking about here, reiterates the principle that it's the right to do something, the right to control that matters, not what you actually do. On that basis alone. Can I interrupt for a minute? Absolutely. I might differentiate between the Mary Maid's defendants and BBSI in terms of right to control. How much right to control did the Mary Maid's defendants have? Did they have the right to fire these employees? No, I'm not saying they had the right to fire the employees, Your Honor. There are differences, I agree with you, both legally and factually. With the Mary Maid's defendants, they're falling under the Patterson case. So we have to show, or at least create here a dispute of fact, that they had the right to control the instrumentality that we're talking about here. In other words, the wage and hour practices. Under their franchise agreement, they could require the franchisee to strictly adhere to whatever they put in their manual, their Mary Maid's manual. And we talk about that in our brief. In the Mary Maid's manual, in evidence, is their piece rate system, their percentage pay system that is the basis for this case. They are simply saying we chose not to do that. But clearly under the contract, they had the right to do it. May I ask a question, Mr. Sutton? Yes, sir. I'm not sure that Patterson is necessarily the applicable case so much as Martinez. And in Martinez, the Supreme Court made clear that the ability to influence the employer doesn't necessarily make one an employer themselves. And I'm not seeing here in the franchise agreement or the Mary Maid's operations manual how Mary Maid's could exert control over the franchise employees themselves. As opposed to influencing some aspects of the franchisee's operations. Well, if I may, Your Honor, I do agree that Patterson, you're right, Patterson was interpreting Martinez. So ultimately we start with Martinez. I agree. But Patterson put a different gloss on it in the franchise context. And that is that you have to go a little further with the franchisor to show they were involved or had power over the instrumentality that's at issue in the case. What's at issue in this case is that Mary Maid's derived that they created a percentage pay plan. The way they had power over that and over the employees is in the franchise agreement. It says they can make the franchise strictly adhere to anything they put in the MM manual. It's in evidence. In the MM manual is the prescribed specific percentage pay plan. That's the very issue of this case. But did the MM manual ever say from Mary Maid's to the franchisees, you must implement this pay system? It instructed them that when they interviewed the employees and they tell them, they instructed them to tell them about the system and describe very specifically how the system works. And in our particular case, with some slight modifications, as it is in evidence, this franchisee did follow that system. Not the percentages were a little different, but overall he admitted in his deposition testimony he followed that system. But can I ask, that seems to me a pretty thin read that the only aspect that you've pointed out about the Mary Maid's operations manual are how someone should be interviewed for employment, as opposed to something more direct saying you must implement this Mary Maid's pay system. Is there anything else that would suggest within the documents themselves that Mary Maid's does require franchisees to impose their pay system? No, I'm not aware of anything else, Your Honor, but they had the right to. They had the right to do it. They could require them to strictly adhere to whatever they put in that manual as broadly defined, and they could change it over time. So since they got involved with the wage and hour process, they had the right to say, this is how we want you to do it. And they should have told them to do it legally because that system that they put out there is illegal. That's why we're here. And they had the right to do it, and it's that right. I'm having trouble with respect to Mary Maid's and seeing how they are in a significantly different position than the defendant in Salazar and Judge Graber's opinion. Can you differentiate the two for me in a way that will convince me? Your Honor, are you talking about with regards to their ostensible agency? No, I'm talking about the franchisor being liable because in Salazar 3, in Judge Graber's opinion, the court found that the franchisor was not an employer. Yes. The distinction here, same with Patterson, is that this defendant specifically got involved in the wage and hour practice that's at issue in the case. In the other cases, they just had a general ability to protect their mark, had the ability to tell things, the apprentice, he had to display things, things of that nature. This case goes beyond that. And again, we're on summary judgment here. This case goes beyond that because we've introduced evidence that they had a broad right, not only a broad right of control, but they got involved and prescribed what it was they wanted him to do in terms of this percentage-based system that Mary Maid's themselves created and gave to the franchisee and that this franchisee substantially followed. So that is very different than just a general overall franchisor with some general rights to control. Under Patterson, you have to show they got involved in the instrumentality that's at issue in the case, and they did here, Your Honor. That's the reason that it is so different. Now, the other thing is they try to say both these defendants, well, we had this agreement, but we did something different. First of all, that's not the law. The agreement themselves, the right to do something, is enough. The fact that you chose not to get involved doesn't absolve you from liability. But let's assume that they could argue legally otherwise. All they've done is create a dispute of fact. All they've done is create a dispute of fact between the facts of the contracts that are an issue, the franchise agreement, the contract with BBSI, and what they say they actually did. That's a dispute of fact that should deny some re-judgment, and we should get to trial. Now, I'd like to talk about ostensible agency. The court mentioned Salazar 3 because we are here also on a legal determination of Salazar 3. I'd like to remind the court that what happened was Mary May's move for some re-judgment, the court initially denied that with regards to the ostensible agency. This is prior to Salazar 3 and under Ochoa and found that there was enough dispute of fact. It was only after Salazar 3 that a motion was filed and the court said that they felt, which we agree, that Ochoa was well-reasoned, which I believe it is, but that they were bound to file Salazar 3. Then, of course, BBSI filed their motion. There was no underlying analysis of the facts. Salazar 3 is an error, and let me show the court why. Wait a minute. I'm going to read what the court said. Excuse me. Salazar 3 is an error. If it's an error and you want to get out from under the error, we're not in a position to do that. You've got to go on bonk for that. Agreed, Your Honor, but the reason I'm pointing it out is because we are requesting that the court certify it to the California Supreme Court, and I think part of the reason it needs to be certified is because it was wrongly decided. This needs to go. This is an issue of California law. It needs to go before the California Supreme Court. This affects many employees in the state. These kind of arrangements are very common. Whether ostensible agency is available under the wage order is a huge issue, and it's never been addressed by the California Supreme Court. Let me read what Salazar 3 said. It reads the wage order 5. It says defines employer to mean one who directly or indirectly or through an agent or any other person employs or exercises control over the wages, hours, or working conditions of any person. Fine. Then it goes on to say, by its plain terms, the reference to, quote, agent, close quote, applies only to an entity that actually employs the worker or that actually exercises control over the wages, hours, or working conditions. McDonald's does none of those things, close quote. Your Honor, McDonald's was not the agent under that scenario. McDonald's was the franchisor. It is wrongly decided. It is in error. The other issue is if we look at the interpretation. Wait, let me interrupt you for a second. The Supreme Court, in a litany of decisions, talks about an employment relationship in the context of the ability to exercise control over wages, hours, working conditions. It's not simply that an agent exists. And as I understand the ostensible agency theory, it doesn't require having any control over a franchisee employee. It's merely that the employee perceives that they are employed by the franchisor. I think that's the disconnect that I'm having trouble with is Martinez, Ayala, they all speak about control over the conditions of employment. An ostensible agency would seem to create a fourth category of employment that has nothing to do with control itself. Well, I agree with you, but the California Supreme Court has never addressed ostensible agency in this context. Let me show you why it does exactly what you said, the wage order, Your Honor. If we read it, which we just did, there's three different scenarios. One is you could be held viable if you directly employ the worker. Two, you indirectly employ the worker. Or through an agent, employ the worker. Now, we are to interpret things like this, such as a statute, so that there's not surplusage to give meaning to all of the language. The first section says directly employed. The second section says indirectly employed. If we followed the logic of Salazar 3, the phrase through an agent employee would be surplusage because that's already covered by either direct or indirect. So obviously by adding through an agent employee, the intent was to do exactly what you described, Your Honor. But it actually doesn't say through an agent directly employed. It says through an agent employs or exercises control over the workplace. That's what the wage order actually says. So the mention of an agent is the ability to control the workplace either directly or indirectly. Your Honor, I respectfully disagree. May I respectfully disagree with that? And the reason is if we look at the language, it says employ or control. So that means that you can have situations where someone could be liable where they have no control. That or is significant. It's been ignored. And the fact that they describe directly employed, indirectly employed, and then through an agent employee tells me a fair reading is that by saying through an agent employee, what you look at is, is the agent, do they exercise control or do they employ? If that's your agent, you are now responsible under ostensible agency if you meet those elements in the ostensible agency for those workers, for liability to those workers for wage and hour purposes. I see no other way that we can break it. Does this blow up the franchise model altogether then? Not at all. If a franchisor wants to organize their business in a way that they don't want to be a joint employer and leave that to the franchisee to handle the day-to-day and everything else, your arguments would seem to suggest that simply because someone perceives the franchisor to be the employer, that would be enough to establish an employment relationship. Well, Your Honor, I would say no, it does not at all. And the reason is in order to prove ostensible agency, the elements require more than just the person, just what they believe. There has to be some culpability, some negligence on behalf of the principal in allowing the third party to lead others to believe that that principal is the employer. And that's the reason it's fair and will not destroy the model. All that has to happen is the franchisors need to be careful in how they monitor their franchisees to make sure they do nothing to mislead the employees. A lot of these franchisees are small. A lot of them have very little money and can't answer if employees bring a claim for their wages. And so for that reason, it's unfair if they have allowed knowingly, culpably, negligently that franchisee to represent to the workers that, hey, I'm working for Mary Maid, this big national company. I'm working for BBSI, this big national company, whatever it may be. It's not fair that they allow that if we can prove those elements and we have introduced evidence of that. The lower court found it with regards to Mary Maid before Salazar. And that's why, Your Honor, I don't know. I respectfully say that it would not destroy the franchise model. The franchisors have a right to do it. They just have to act responsibly. And if they have the right to control the wages, they have to make sure the franchisees pay it. And if they allow the franchisees to represent that the franchisor is the employer, they need to make sure that all the laws are compliant with, including, certainly, the laws of wage and hour, to make sure these employees are paid fairly. You know, if we look going a little bit different to the common law employer with BBSI, this is a classic case. BBSI drafted a contract that said we have the right to hire fire discipline. They now try to say, oh, that was boilerplate. Your Honor, this is the contract they drafted. They say in their brief they're a national HR consulting company. I have to assume they know what it means when you say hire fire discipline. They drafted an employment. And not only that, they specifically say in the document that we are an employer. And a joint employer. They drafted a handbook that was given to employees that say they're a joint employer. So, Your Honor, it absolutely is enough to get past summary judgment. So I would like to reserve the rest of my time for rebuttal unless the courts have any – Your Honors have any questions at this time. I have no other questions, my colleagues. Okay. Thank you. Good morning, Your Honors. I'm Marlene Morocco for the Merrymaid Defendants, Service Master and the Merrymaid Defendants. I believe Your Honors correctly discerned what's going on here, and that is that plaintiff's counsel wants you – appellant wants the court to overturn Salazar, the Ninth Circuit Salazar decision, which I will call Salazar 3. That decision is directly on point, and as Your Honor noted, it is not only directly on point vis-à-vis the ostensible agency issue, but it's also directly on point with its application of Martinez v. Combs. Plaintiff's counsel – I'm sorry – appellant tried to distinguish Salazar 3 based on the facts and the assertion that here the Merrymaid's defendants had been involved with the instrumentality of harm. But I would like to remind the court of the facts in Salazar 3, which were much more egregious, frankly, than the facts that are at issue here. And the court expressly said in Salazar 3 that the evidence in the record viewed in the plaintiff's favor would permit the finding that the franchisor actually caused the alleged wage and hour violations or could have prevented them but didn't do so. McDonald's had given the franchisee the pay system, had required them to use it, and there were programming errors in the pay system that caused the very wage and hour violations about which the plaintiffs were complaining. And despite that, the court found that there was no direct control on the part of the franchisor vis-à-vis the franchisee's employees, and as a result that the plaintiffs could not satisfy the Martinez v. Combs tests, either prongs 1, 2, or 3. I'm not sure how the facts would play out in your case with respect to ostensible agency. What's your view as to whether or not we should certify that question? Because I think it might make a major difference in the BBSI case. It may or may not make one to your client. But I'm asking a more general question. How important is that question in this field? Should we certify? In my view, it should not be certified. As I mentioned in my brief, the California Court of Appeal in Taylor v. Financial Casualty just recently addressed the ostensible agency issue. A request for cert to the California Supreme Court was filed, and they did not take the case. If they were — it is true that that says nothing about their view of the merits, but it does go to the question of whether they have any interest in reviewing this issue. The issue was put squarely before them in that requested appeal. They didn't take it. Perhaps more importantly here, the issue of ostensible agency, the appellants didn't even satisfy ostensible agency, even if it did apply, even if it could apply. They didn't satisfy it on the merits here. Why? That's why I'm differentiating your case from the BBSI case. Yes. Correct. So here, they didn't show it on the merits because the appellants here testified — well, let me take one step back. I'm sorry. As I explained in my brief, in order to show and make out a claim for ostensible agency under the common law, you have to show a representation made by the principal to the person who's claiming ostensible agency. Mere silence is insufficient. So they would have to show some communication by the Mary Maids defendants directly to the plaintiffs in this case, the appellants in this case, or the class that led them, for example, to believe that Mary Maids was their employer, number one, that they relied on that representation to their detriment would be the second thing. And neither of those can be shown here. The appellants, the plaintiffs in the case all testified that they never had any interaction with any of the Mary Maids defendants. They didn't manage them. They didn't get training from them. They never met any of them. There were no communications from them at all. Appellant wants to point to things that were written on the handbook by BBSI and by the franchisee. Those are not representations by the franchisor, number one. Number two, the plaintiffs in this case never addressed the question of reliance. They don't claim to have relied on any of these statements to their detriment. In fact, all of the representations that they identify on the handbook or the wage statement, the words Mary Maids, all happened after they were hired. So they don't identify any reliance, anything that they did. So putting aside this general issue of can there be ostensible agency in a franchise context, they just wouldn't meet it even if it was possible. Let me ask this. As I was trying to see, going back to the regular Mary Maids employment, whether it's a joint employer or the defendants are, is there anything in the Mary Maids operations manual that says that what we have here are guidelines and not requirements? The Mary Maids operations manual has all kinds of language in it. As you can see, it's an exhibit. It's a lengthy document, and some of the things say these are best practices. Some of the things say you should do this. So it's very kind of fact-specific. But to be clear, that operations manual is dated from 2007. The testimony by the Mary Maids person most knowledgeable was that it was not a state-specific document, that they had just one that they had for all franchisees. They had never updated it since 2007, and it actually moved to kind of a best practices online different kind of a system. It was clear to the franchisee, to MM879, that they were not obligated to follow the provisions in that document. Mr. Skadberg testified that he never heard of that document, never saw that document. And I have like five or six pages in the brief that go through all of the admissions that he made about he was the one who made the decisions. He was the one who decided what to do to hire, to fire, how to pay. And he didn't just say that. There's evidence in the record that he did that. And most notably, I would call the court's attention to, Mr. Skadberg took over in 2008. He took over MM879. In 2009, Mary Mades, the franchisor, sent an email to him and other franchisees saying, we're changing our pay plan, the pay plan at issue here. We're changing our pay plan for the corporate branches because it's a potential risk of liability in California. You all can do what you want, but we're telling you what we're doing. You know your only obligation is to comply with the law. Other than that, you can do what you want. Mr. Skadberg, MM879, ignored that, chose to do nothing about it for years. And so for appellants to suggest that the record somehow shows that MM879 and Mr. Skadberg were compelled to do whatever Mary Mades said with regard to or suggested with regard to a pay plan is simply not at all supported by the record. Now, will you be speaking at BBSI as well to those issues? No. Okay. Different, different. We don't have a counsel list. Counsel, are you intending to speak on BBSI's behalf as well within this time allotment? I'm just going to give up my other. You're playing the share. Share the 20. Okay. And when will you turn over? I can turn it over now, unless anybody has any further questions. I do not. Thank you very much. Go ahead, sir. Good morning, Your Honor. David Dalby for Barrett Business Services, Inc., also referred to as BBSI. May it please the Court. The argument that the appellants have made and continue to make is seemingly or absolutely always premised on the Ayala versus Antelope Valley newspaper comment regarding control of the employees. And as the district court properly pointed out, the Ayala case is just not applicable to the joint employer analysis that we're discussing here and the Ayala case. So why is Ayala not applicable? Because it doesn't have anything to do with the joint employer analysis. But it tells us exactly what we should do as we're trying to figure out whether there's an employment relationship. I'm sorry, Your Honor. But Ayala tells us exactly what we should consider as we are trying to figure out if there's an employment relationship. And I don't see that what it says is inapplicable to the employment relationship when it's a joint employer. Fotrell doesn't either. The district judge relied on Fotrell. It's not a joint employment either. I mean, the question is whether there's an employment relationship. So I don't see how you can ignore what Ayala says. It's from the California Supreme Court, and I don't see that it's irrelevant. Your Honor, the district court carefully analyzed that, and as did the court in the most recent case, Taylor, which also rejected Ayala. And the reason that it is not applicable is it is not a joint employer case. It is a case relating to independent contractors and whether or not a class could be certified. The comment does not have anything to do with the analysis of what was the actual relationship of BBSI and these individual employees. And so to rely upon that one snippet of a comment that control is the issue, even if you accept that, BBSI did not have any control over these employees. Ayala was the evidence. Let me just interject. Ayala was itself interpreting Borrello, which is about the third employment test under Martinez. I share my colleague's, Judge Fletcher's, sense that, of course, this is applicable. This is in relation to one's control over a common law employment relationship. And it's not a single stray comment in Ayala. It's throughout the opinion that the focus needs to be on the control that one has and not on the exercise of it. I'm willing to accept that point, Your Honor. The distinction, however, is that in this case there is no evidence that BBSI had control. The evidence is all contrary to that argument. Are you saying it did not have control or did not choose to exercise the control it clearly reserved for itself in the papers? It did not have control. The testimony of the testimony. But let's start with the contracts themselves because there are several documents that show a joint employment relationship. You have the contract between BBSI and MM879 that directly says that Barrett shall have the right to hire, discipline, and terminate employees. You have the application for co-employment where at the very top of that document says a joint employer. You have an employee handbook that the evidence shows was drafted by BBSI, which talks about both BBSI and the franchisee as co-employers. It's not just one document. It's throughout the record that BBSI held itself out as and had the contractual authority to fire people. Go ahead. I'm sorry, Your Honor. Go ahead and react. Thank you, Your Honor. As I was going to comment, Your Honor, the district court reviewed that information and addressed all of those points. With respect to the language of the contract that said right to hire, fire, or discipline, the PMK or person most knowledgeable at Barrett Business Services testified that that was an old contract and the language had been deleted. As to the joint application, the application and the handbook, as the district court pointed out, the starting point can be the actual contract. But then you have to evaluate the actual relationship of the parties to determine what their relationship is. In this case, the testimony of MM879 was that Scadmore had all control over those employees, and he did not consider those employees to be the employees of BBSI. In fact, they were not. BBSI had nothing to do with establishing working conditions, working environment, the rates of pay, or how they did their work. But it seems to me that you're describing quintessentially tribal issues. It's not a tribal issue, Your Honor, because there is no – If I can finish, if I can finish. I'm sorry, Your Honor. If the contracts allowed BBSI to hire and fire – well, to fire people, to drug test them, to discipline them based on failed drug tests, to do – and held itself out as an employer. And I understand you have a point that they never exercised it, and you have testimony from the franchisee's owner saying, I'm the only one that was in charge. Those are disputes of a material nature, aren't they? No, they're not, Your Honor, because there is no contrary evidence to what the testimony of the person most knowledgeable of MM879 and BBSI were. BBSI provided three different individuals to testify as Rule 12b-6 witnesses, and all their testimony was consistent that BBSI never hires, fires, disciplines, terminates any of its clients' employees. But that's a factual question as to what they did. It's not a legal question as to what they had the right to do. But, Your Honor, there isn't a factual question because the plaintiffs, the appellants, have not put forth any evidence that BBSI ever exercised any of those rights. You're not taking my point. As I read Ayala and other California cases, the question is not whether the right to hire and fire is exercised. The question is whether the right exists. And as I see it, the right exists. But the most recent discussion of that occurred in the Taylor case where the court rejected the Ayala analysis, and the district court also analyzed the Ayala case and said, yes, the starting point of the relationship can be what's written in a contract, but the party's behavior is what determines what their rights and responsibilities are. And just in this case, there is absolutely no evidence that any of the supposed additional rights that BBSI supposedly retained were ever exercised by it. So there is no conflict in the record. There is no tribal issue because there is no issue, Your Honor. But you don't dispute that there is a contractual right? I do dispute that because the document that they were referring to was an old document that has since been changed and that language has been deleted. Well, it changed when? After the date of employment? No. The testimony of BBSI's Rule 12b-6 witness, Mr. Blotz, occurred in 2014. And at the time of his testimony in May of 2014, he testified that that language, hire, fire, or discipline, had been deleted from the contract. And it's in the record, Your Honor. It's in my brief. And he testified that it was changed because it did not reflect the reality of the relationship of the parties. But does the record disclose when that change occurred in relation to the employment of the plaintiffs? The record would show that, I believe, Your Honor, I believe the record would show that the contract that was used at the deposition of Mr. Blotz would have been in place at the time this lawsuit was filed. However, Mr. Blotz testified that the language had been changed before his deposition in May of 2014. Okay. Let me ask you a question about ostensible agency. If Salazar 3 correctly states the California law, it sounds as though ostensible agency doesn't even exist as a concept here. But if it did, is your client in trouble? No, because BBSI did not ever have any interaction with these employees that would lead them to believe that it was their employer. BBSI had absolutely no— Does the employment manual say joint employer?  And so if I'm an employee and I'm reading the employee's manual, I guess I'm told that BBSI is my employer. Correct? That's what the writing says. And once again, the analysis is what exactly occurred in this relationship. Should we certify to the California Supreme Court the question of ostensible agency? No, I do not believe so. Because you kind of like the answer out of Salazar 3. Very much so, but also because the California Supreme Court had the opportunity to do that with respect to the Taylor decision. And as counsel for Mary Mage pointed out, it rejected or declined a petition for review. So the California Supreme Court had the opportunity to take up that issue and decided not to. Your Honors, I will submit, and I believe that the judgment of the district court should be affirmed. Thank you very much. Thank you. You're on mute. The judgment should be—thank you. The judgment should be reversed in both respects. First of all, with regards to Taylor, as we said in our brief, it's clear authority, long-term authority. The fact that the California Supreme Court declines to review a case means absolutely nothing. They have a huge caseload. They make decisions on all kinds of variety. We're not to read anything into that. With regards to Mary Mage's argument, the court asked a fantastic question. Is there anywhere where Mary Mage told the franchisees that the pay system was optional? And I heard some talk, but I didn't hear the counsel say yes. The answer is no. There isn't, and they can't point to any. In fact, the language that we've cited and the record says they have the right to tell the franchisees to strictly adhere, close quote, close quote, to whatever they put in the manual, and that pay system that's at issue in the case is in the manual. So the answer is they never told them that. That's not the case. And, in fact, the memo brought up by Mary Mage's counsel where it's obviously they admit, and that's why we're here, that the pay system they put out there is illegal in California. That's why they were telling everybody, hey, you know, we need to change this because they figured out it was illegal, and that's why I have this case. That very pay system shows what they should have done. That memo shows what they should have done. They had the right to strictly tell them to strictly adhere. When they sent out that memo, what they should have done is say we order all of you franchisees under our contract where you have a right to tell you to strictly adhere to what we tell you to do that you need to change it. You need to comply with the law. They didn't do that, and that's the very point we're talking about. They had the right to do it, and they turned a blind eye towards it, and so did BBSI, and that's why they need to be held responsible for what these people have been shorted in their pay. They shouldn't get around with it and get away with it, and some small little franchisee who may not have the ability to even pay this is the only one we can go against. They need to be responsible for this, and with regards to BBSI, the contract was in place in 2007, which is the beginning of the class period. There's no testimony that I'm aware of that he said it changed with regard to MN-879. What he said was in 2014 when I took his deposition, they changed that, deleted it sometime that year generally. Well, of course they did. You know why they did? I can tell you why they did. They did because of our case. They did because they realized they shouldn't have that language in there. It makes them a joint employer. So, Your Honor, lastly, with regards to Salazar, there's some discussion about that. Look, in that case, the court found, and it was not expressly proven, that the franchisee was required to use or that McDonald's even had the power to require him to use that pay system. In our case, as I pointed out, Mary Mates had the ability to tell them to strictly adhere to any pay system they wanted. So that is a great distinction. Lastly, I think what's so important and what's been demonstrated by today is the absolute importance to all the workers in California, the many millions that are subject to these kinds of pay systems, to let the California Supreme Court for the first time address the issue of ostensible agency. There is at least enough question and ambiguity in that wage order, as I described, to put it to the California Supreme Court and let them tell us once and for all. If there's no further questions, Your Honor, I submit and ask that the court reverse the rulings of the trial court. Thank you. Thank you, Counsel. All rise.
judges: WALLACE, FLETCHER, SANCHEZ